**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Edward John Sanders, | ) | No. CV-11-551-TUC-BGM |
| Petitioner, | ) ) | |
| vs. | ) ) | **ORDER** |
| Charles L. Ryan, et al. | ) ) ) | |
| Respondents. | ) ) ) | |

Currently pending before the Court is Petitioner Edward John Sanders's Second Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition") (Doc. 24). Respondents have filed a Limited Answer to Petitioner for Writ of Habeas Corpus ("Answer") (Doc. 30) and Petitioner has filed a Response to Respondent's [sic] Limited Answer to Petition for Writ of Habeas Corpus ("Reply") (Doc. 31). Also pending are Petitioner's Motion to Dismiss Cases (Doc. 49), Motion to Dismiss Case on Error D-N-A Results (Doc. 50), Motion for a New Trial (Doc. 55), Motion for to [sic] Appoint New Counsel (Doc. 56), Motion for Case Status Acknowledge Back To Petitioner (Doc. 57), Motion for a New Trial (Doc. 58), Motion for to [sic] Appoint New Counsel (Doc. 59), Motion for a New Trial (Doc. 61), Motion for to [sic] Appoint New Counsel (Doc. 62).

. . .

. . .

# I.    FACTUAL AND PROCEDURAL BACKGROUND

The Arizona Superior Court, Pima County stated the facts[1] as follows:

> On July 23, 2000, Irene Johnson, an eighty-eight year old, asked her neighbor to pick up some items at the grocery story [sic].  When the neighbor attempted to deliver the groceries the next day, Ms. Johnson did not answer the door.  In the evening of July 24, the neighbor used his key to enter Ms. Johnson's apartment, where he found Ms. Johnson dead on the ground in her bedroom doorway.
>
> The suspect gained entry to the house by cutting through a screen on a kitchen window.  Ms. Johnson suffered severe head trauma, had bruising over her arms, chest, and breasts, and blood was found on a pair of underwear.  Ms. Johnson also had bruising on her sternum and marks showing that she may have been strangled, and defensive wounds were found on her body.  The sternum bruising had a distinctive flower pattern in it.  The cause of death was determined to be primarily from the strangulation with the blunt force injuries as a secondary factor.
>
> Detectives thought the bruising on Ms. Johnson's breasts may have been made by the suspect's teeth.  Saliva was taken from the bruises on Ms. Johnson's breasts.   After further investigation, detectives believed the Petitioner may have killed Ms. Johnson.  Samples of the Petitioner's head and pubic hair were taken, as well as his clothing.  Investigation further revealed that the Petitioner was in possession of a black belt that had a buckle with a flower pattern on it.  The Petitioner also had two pairs of gloves and a cutting tool.
>
> The crime lab determined that the DNA in the saliva sample found on Ms. Johnson's breast matched the Petitioner's DNA, although no fingerprints were found in the home.  An unknown hair sample found in Ms. Johnson's home was not a match to any available DNA sample.  Based primarily on this evidence, a jury found the Petitioner guilty of the murder and rape of Ms. Johnson.  The Petitioner was sentenced to consecutive natural life and life sentences of imprisonment.

Petition (Doc. 24) at 37-38; Answer (Doc. 30), In Chambers Ruling, Re: Petition for Post Conviction Relief 2/10/2011 (Exh. "K") at 1-2.

A jury convicted Edward John Sanders of one count each of first degree murder, burglary in the second degree committed with sexual motivation, sexual assault with serious

---

[1]As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007)*; Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

physical injury, sexual abuse, and kidnapping.  *See* Answer (Doc. 30), Sentence of Imprisonment 8/18/2005 (Exh. "C").  Petitioner was sentenced natural life for first degree murder, with concurrent sentences of 3.5 years for second degree burglary, 1.5 years for sexual abuse, and 5 years for kidnapping.  *Id.*  Petitioner was also sentenced to life imprisonment to run consecutively with the natural life sentence for sexual assault with serious physical injury.  *Id.*

### A.    Direct Appeal

Petitioner appealed his convictions to the Arizona Court of Appeals, raising the single claim that the trial court erred "in finding that the Y-STR technology and the ReliaGene kit were generally accepted in the relevant scientific community for forensic analysis."  Answer (Doc. 30), Appellant's Opening Brief (Exh. "D") at 1.

On December 26, 2006, the Arizona Court of Appeals affirmed Petitioner's convictions.  *See* Answer (Doc. 30), Arizona Court of Appeals Mem. Decision 12/26/2006 (Exh. "A").  The Arizona Court of Appeals found as an initial matter that Petitioner had waived any argument regarding whether the Y-STR typing method "passed muster under *Frye*[.]" Answer (Doc. 30), Exh. "A" at 3.  The court noted that the *Frye* test did not apply to a "commercially manufactured kit[,]" but rather to the scientific methodologies.  *Id.* at 4. Because "the trial court expressly found that Y-STR typing had been widely accepted by the scientific community based on evidence it had been used significantly in United States courts in paternity determinations and the science behind that methodology 'is identical to that of PCR,' a methodology [the Arizona] supreme court specifically accepted . . . [the court of appeals found] no error in the trial court's admission of Reliagene's DNA test results."  *Id.* at 4-5.  Furthermore, the court found that "Reliagene's test results were merely cumulative to the police crime laboratory test results[.]" *Id.*

On May 22, 2007, Petitioner's petition for review with the Arizona Supreme Court was denied without comment.

 . . .

- 3 -

1

## B.    Post-Conviction Relief Proceeding

2      "On November 6, 2009, the Petitioner's Rule 32 counsel filed a brief pursuant to

3  *Montgomery v. Sheldon*, 181 Ariz. 256, 889 P.2d 614 (1995), stating that he could not find

4  any colorable claims under Rule 32 of the Arizona Rules of Criminal Procedure and asked

5  for time for the Petitioner to file a petition pro se."  Answer (Doc. 30), Exh. "K" at 2.  On

6  January 28, 2010, Petitioner filed his *pro se* petition for post-conviction relief  ("PCR").

7  Petition (Doc. 24) at 7; Answer (Doc. 30), Exh. "L." Petitioner claimed, *inter alia*, "1) actual

8  innocence; 2) the admission of DNA testing using unproven methods; 3) speedy trial

9  violations; 4) that police planted evidence; 5) that a similar crime was committed in the

10  community since the Petitioner's trial; 6) that he was mauled by a police dog when he was

11  arrested; 7) use of his juvenile record; 8) that news coverage may have influenced jurors and

12  that a juror harassed him; 9) that police harassed his friends; 10) that he was harassed by a

13  juror and by other inmates at the Arizona State Hospital while being restored to competency;

14  11) *Miranda* violations; and 12) ineffective assistance of counsel, including claims that Mr.

15  Higgins flirted with the prosecutor, that Mr. Mussman confused him, that Mr. Higgins gave

16  him money, and a failure to investigate DNA issues."  Answer (Doc. 30), Exh. "K" at 2;

17  Petition (Doc. 1) at 7-36; *see also* Answer (Doc. 30), Exh. "L."

18      On February 10, 2011, the trial court dismissed Petitioner's post-conviction relief

19  petition.  *See* Answer (Doc. 30), Exh. "K."  The court carefully analyzed each of the claims

20  presented, and denied relief because "Petitioner ha[d] failed to present a material issue of fact

21  or law that would entitle him to an evidentiary hearing and failed to state a colorable claim

22  for relief on any basis."  *Id.* at 7.  The trial court analyzed Petitioner's claims under state law,

23  with the exception of the alleged *Miranda* violations and ineffective assistance of counsel.

24  *See id.*  Regarding *Miranda*, the court noted that "Petitioner does not show which statements

25  were presented in violation of *Miranda*, the Petitioner never raised the issue at trial on or

26  appeal, and the Petitioner has failed to provide the Court with a legal basis for granting relief

27  on this issue."  *Id.* at 5.  The court analyzed Petitioner's ineffective assistance of counsel

28  claim pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and state law.  *Id.*  In

1  addition to finding that "[n]one of the[] accusations are backed up with any sort of evidence
2  that would give the Court reason to grant Rule 32 relief." Answer (Doc. 30), Exh. "K" at 6.
3  The court further stated that "[t]hese claims would not have caused the Petitioner to suffer
4  actual prejudice, nor does he claim as much." *Id.* Finally, the court noted that "DNA was
5  a central element at this case and was heavily litigated in court, at trial, and on appeal.
6  [Therefore,] [i]f there were any potential DNA issues that were missed, they would have been
7  so minuscule and remote as to preclude any defense attorney from being ineffective for
8  failing to follow through." *Id.*

9        On March 10, 2011, Petitioner filed a petition for review by the Arizona Court of
10  Appeals. Answer (Doc. 30), Pet. for Review 3/11/2010 (Exh. "N"). On June 28, 2011, the
11  Arizona Court of Appeals granted review, but denied relief. Answer (Doc. 30), Mem.
12  Decision 6/28/2011 (Exh. "O"). Upon review of the trial court's minute entry, the court of
13  appeals approved and adopted the trial court's "detailed and thorough minute entry order[.]"
14  *Id.* at 3. Petitioner did not seek review with the Arizona Supreme Court. On September 22,
15  2011, the Arizona Court of Appeals issued its mandate. Answer (Doc. 30), Mandate
16  9/22/2011 (Exh. "P").

17  ### C.    *The Instant Habeas Proceeding*

18        On September 1, 2011, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ
19  of Habeas Corpus by a Person in State Custody (Doc. 1). On October 5, 2011, the Court
20  dismissed Petitioner's petition with leave to amend for lack of personal jurisdiction. Order
21  10/5/2011 (Doc. 9). On November 7, 2011, Petitioner filed an Amended Petition Under 28
22  U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 14). On
23  January 11, 2012, the Court again dismissed Petitioner's petition with leave to amend for
24  failure to state a claim "that he is in custody in violation of the Constitution or the laws or
25  treaties of the United States." Order 1/11/2012 (Doc. 20). On February 27, 2012, Petitioner
26  filed his Second Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by
27  a Person in State Custody (Doc. 24). Petitioner claims three (3) grounds for relief. First,
28  Petitioner asserts a claim for a "[d]enial of due process and equal protection under the laws

as per U.S. Constitution Fourteenth Amendment[,] . . . [regarding the denial of his] request for DNA testing of fingernail scrapings from deceased victim[.]"  Petition (Doc. 24) at 47 (emphasis in original).  Second, Petitioner asserts the denial of due process and equal protection regarding his "request for re-testing Body Fluid Evidence from deceased victim . . . even though the [sic] were admissions by State's witnesses that the technical equipment used to test the body fluid evidence was apparently not operating properly."  *Id.* at 48 (emphasis in original).  Third, Petitioner claims "[i]neffective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution[,] [for] fail[ure] to raise at trial, the fact that the '310 machine' which analyzes DNA samples, was not working properly." *Id.* at 50.  Respondents filed their Limited Answer to Petition for Writ of Habeas Corpus (Doc. 30), and Petitioner replied (Doc. 31).

Additionally, Petitioner has filed several untitled, supplemental pleadings with the Court.  *See* Docs. 41, 42, 43, 44, 45, 46, 47, 48 & 52.  These documents contain previous court filings, documents apparently contained within his attorneys' files, and Petitioner's continued stream of consciousness proclamations of innocence.  *See id.*  Petitioner continues to accuse Tucson Police Department ("TPD") Officer Taylor of lying and planting evidence; question the DNA evidence; and assert "new evidence" in the form of sheer speculation regarding the sufficiency of the evidence presented in the state courts.  *See id.*

## II.   STANDARD OF REVIEW

### A.   *In General*

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*."  28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, — U.S. — , 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). Correcting errors of state law is not the province of federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'" *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct. 2842, 2854, 168 L.Ed.2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)). Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] which demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 131 S.Ct. at 1398 (citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review. *See* 28 U.S.C. § 2254. "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013). Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigen*, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect. *Id.*, 550 U.S. at —, 127 S.Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013). Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result. *See Harrington v. Richter*, — U.S. —, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905

1   (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on

2   the claim being presented in federal court was so lacking in justification that there was an

3   error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S.Ct. at 10

4   (quoting *Harrington*, 562 U.S. at —, 131 S.Ct. at 786-87) (alterations in original).

5               **B.      Exhaustion of State Remedies**

6               Prior to application for a writ of habeas corpus, a person in state custody must exhaust

7   all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides

8   a simple and clear instruction to potential litigants: before you bring any claims to federal

9   court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509,

10  520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). As such, the exhaustion doctrine gives

11  the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal

12  rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004)

13  (internal quotations omitted). Moreover, "[t]he exhaustion doctrine is principally designed

14  to protect the state courts' role in the enforcement of federal law and prevent disruption of

15  state judicial proceedings." *Rose v. Lundy*, 455 U.S. at 518, 102 S.Ct. at 1203 (internal

16  citations omitted). This upholds the doctrine of comity which "teaches that one court should

17  defer action on causes properly within its jurisdiction until the courts of another sovereignty

18  with concurrent powers, and already cognizant of the litigation, have had an opportunity to

19  pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590,

20  94 L.Ed. 761 (1950)).

21              Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as

22  the applicant "has the right under the law of the State to raise, by any available procedure the

23  question presented." 28 U.S.C. § 2254(c). "[O]nce the federal claim has been fairly

24  presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404

25  U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). The fair presentation requirement

26  mandates that a state prisoner must alert the state court "to the presence of a federal claim"

27  in his petition, simply labeling a claim "federal" or expecting the state court to read beyond

28  the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct.

1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds). Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349. "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, §23.3b (4th ed. 1998)).

In Arizona, however, for "cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998). Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review. *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

### C. Procedural Default

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). Moreover, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.*, 501 U.S. at 728, 111 S.Ct. at

2554.  This is true whether the state law basis is substantive or procedural.  *Id.* (citations omitted).  Such claims are considered procedurally barred from review.  *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The Ninth Circuit explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law.  In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted).  Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default.  *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991))).

*Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005).  Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways.  First, where the petitioner presented his claims to the state court, which denied relief based on independent and adequate state grounds.  *Coleman*, 501 at 728, 111 S.Ct. at 2254.  Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory."  *Id.*  Second, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Id.* at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted).  Thus, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy."  *Cassett*, 406 F.3d at 621 n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (emphasis in original).

1    Where a habeas petitioner's claims have been procedurally defaulted, the federal
2    courts are prohibited from subsequent review unless the petitioner can show cause and actual
3    prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d
4    334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal
5    habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*,
6    477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (recognizing "that a federal
7    habeas court must evaluate appellate defaults under the same standards that apply when a
8    defendant fails to preserve a claim at trial.").  "[T]he existence of cause for a procedural
9    default must ordinarily turn on whether the prisoner can show that some objective factor
10   external to the defense impeded counsel's efforts to comply with the State's procedural rule."
11   *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also*
12   *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any
13   cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such]
14   there is no basis on which to address the merits of his claims.").  In addition to cause, a
15   habeas petitioner must show actual prejudice, meaning that he "must show not merely that
16   the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and
17   substantial disadvantage, infecting his entire trial with error of constitutional dimensions."
18   *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations
19   omitted).  Without a showing of both cause and prejudice, a habeas petitioner cannot
20   overcome the procedural default and gain review by the federal courts. *Id.*, 106 S.Ct. at
21   2649.

22   The Supreme Court has recognized, however, that "the cause and prejudice standard
23   will be met in those cases where review of a state prisoner's claim is necessary to correct 'a
24   fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546,
25   115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac* 456 U.S. 107, 135, 102 S.Ct. 1558, 1572-73,
26   71 L.Ed.2d 783 (1982)).  "The fundamental miscarriage of justice exception is available
27   'only where the prisoner *supplements* his constitutional claim with a colorable showing of
28   factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d

1  203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct.
2  2616, 2627, 91 L.Ed.2d 364 (1986)).  Thus, "'actual innocence' is not itself a constitutional
3  claim, but instead a gateway through which a habeas petitioner must pass to have his
4  otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404,
5  113 S.Ct. at 862.  Further, in order to demonstrate a fundamental miscarriage of justice, a
6  habeas petitioner must "establish by clear and convincing evidence that but for the
7  constitutional error, no reasonable factfinder would have found [him] guilty of the underlying
8  offense."  28 U.S.C. § 2254(e)(2)(B).

9       In Arizona, a petitioner's claim may be procedurally defaulted where he has waived
10  his right to present his claim to the state court "at trial, on appeal or in any previous collateral
11  proceeding." Ariz. R. Crim. P. 32.2(a)(3).  "If an asserted claim is of sufficient constitutional
12  magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently'
13  waived the claim." *Id.*, 2002 cmt.  Neither Rule 32.2 nor the Arizona Supreme Court has
14  defined claims of "sufficient constitutional magnitude" requiring personal knowledge before
15  waiver. *See id.*; *See also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002).  The Ninth
16  Circuit recognized that this assessment "often involves a fact-intensive inquiry" and the
17  "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at
18  622.

19

20  **III.  STATUTE OF LIMITATIONS**

21       The AEDPA mandates that a one-year statute of limitations applies to applications for
22  a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Generally, the
23  limitation period begins to run from "the date on which the judgment became final by the
24  conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C.
25  § 2244(d)(1)(A).  Section 2244(d)(1) mandates that the one year limitation period shall run
26  from the latest of:

27       (A) the date on which the judgment became final by the conclusion of direct
        review or the expiration of the time for seeking such review;
28

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083, 1086 (9th Cir. 2005). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Respondents do not dispute the timeliness of Sanders's Petition. The Court has independently reviewed the record and finds that the Petition is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).

## IV.   ANALYSIS

### A.   *Ground One: DNA Testing of Fingernail Scrapings*

Petitioner asserts that his request for DNA testing of fingernail scrapings from the deceased victim was denied, "even though there was evidence of defensive wounds on [the] victim, and DNA evidence could have provided exculpatory evidence." Petition (Doc. 24) at 47. Petitioner further states that the trial court judge noted that there were no defensive wounds on the victim in contravention to the medical examiner's testimony. *Id.* Petitioner alleges that based in part upon this conclusion, the trial court judge found that it was "unlikely that fingernail scrapings would yield exculpatory evidence." Answer (Doc. 30), Under Advisement Ruling Re: Motion for Order Directing Retesting and for Release of Evidence for Examination and Testing (Exh. "J") at 2.

A petition for habeas corpus by a person in state custody:

shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

1   28 U.S.C. § 2254(b)(1).  The exhaustion requirement cautions petitioners "before you bring

2   any claims to federal court, be sure that you first have taken each one to state court."  *Rose*

3   *v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982); *see also* 28

4   U.S.C. § 2254(b)(1)(A).  "Generally, a petitioner satisfies the exhaustion requirement if he

5   properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2)

6   throughout one entire judicial postconviction process available in the state."  *Casey v. Moore*,

7   386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus*

8   *Practice and Procedure*, §23.3b (4th ed. 1998)).  "Whether a claim is exhausted through a

9   direct appellate procedure, a postconviction procedure, or both, the claim should be raised

10  at all appellate stages afforded under state law as of right by that procedure." *Id.* (citations

11  omitted).

12          As Respondents point out, Petitioner failed to raise this claim at any time before the

13  state courts through either appellate or postconviction procedure.  *See* Answer (Doc. 30) at

14  5.  Although Petitioner filed a *pro se* request for DNA testing pursuant to A.R.S. § 13-4240,

15  he did not raise it through Arizona's appellate or postconviction procedures.  *See* Answer

16  (Doc. 30) at 3, Pet.'s Petition Post-Conviction Deoxyribonucleic Acid Testing (Exh. "H"),

17  Resps.' Opposition to Post-Conviction Order for Retesting of DNA Evidence/Motion for

18  Reconsideration (Exh. "I") & Under Advisement Ruling Re: Motion for Order Directing

19  Retesting and for Release of Evidence for Examination and Testing (Exh. "J").  As such, it

20  is not exhausted.  Further, the Arizona rules preclude Petitioner from obtaining relief for this

21  claim in the state courts now, absent an applicable exception, which Petitioner does not

22  assert.  *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(a)(3), 32.4.  Therefore, Petitioner's claim

23  regarding DNA testing of fingernail scrapings is unexhausted and procedurally defaulted.

24  *Coleman*, 501 at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted) (recognizing that where

25  a "petitioner failed to exhaust state remedies and the court to which the petitioner would be

26  required to present his claims in order to meet the exhaustion requirement would now find

27  the claims procedurally barred").

28

1    Where a habeas petitioner's claim has been procedurally defaulted, the federal courts

2    are prohibited from subsequent review unless the petitioner can show cause and actual

3    prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d

4    334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal

5    habeas review unless petitioner demonstrated cause and prejudice).  Petitioner has failed to

6    show cause or demonstrate any actual prejudice, and as such the Court will not consider the

7    merits of this claim.

8    **B.      Ground Two: Re-testing of Body Fluid Evidence**

9    Petitioner asserts a claim for relief based upon alleged due process and equal

10   protection violations stemming from the denial of his request for "re-testing Body Fluid

11   Evidence from deceased victim . . . even though the [sic] were admissions by State's

12   witnesses that the technical equipment used to test the body fluid evidence was apparently

13   not operating properly."  Petition (Doc. 24) at 48 (emphasis in original).  Petitioner relies on

14   an e-mail from "a DNA scientist" to his attorney that "there are some examples of samples

15   being tested several times over and I just noticed something in the data which indicates that

16   lab **_may_** have been having a problem with the 310 machine."  *Id.* (emphasis added).

17   Petitioner sought DNA retesting of the bodily fluids in both his PCR petition and his

18   petition for review to the Arizona Court of Appeals.  Answer (Doc. 30) at 6, Exh. "K" at 2-3,

19   Exh. "L" at 15-17, 23-27, Exh. "N" at 2-3; Petition (Doc. 24) at 21-23, 31-35.  Petitioner's

20   claim and the state courts' analysis were based upon state law.  *See* Answer (Doc. 30) at 6,

21   Exh. "K" at 2-3, Exh. "L" at 15-17, 23-27, Exh. "N" at 2-3, Mem. Decision 6/28/2011 (Exh.

22   "O") at 2-3; Petition (Doc. 24) at 21-23, 31-35.  Although Petitioner refers to the phrase

23   "Due Process" once in his PCR petition, there are no facts or argument to delineate what this

24   claim might be.  Answer (Doc. 30), Exh. "L" at 6, Petition (Doc. 24) at 12.  The fair

25   presentation requirement  mandates that a state prisoner must alert the state court "to the

26   presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting

27   the state court to read beyond the four corners of the petition is insufficient.  *Baldwin v.*

28   *Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's

assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).  Therefore, Petitioner's due process and equal protection claim regarding the retesting of bodily fluid evidence is not exhausted.  *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory").

Moreover, the state court appropriately addressed this issue on state law grounds.  As such, Petitioner's claim is procedurally barred from habeas review and the Court will not consider the merits of this claim.  *Coleman v. Thompson*, 501 U.S. 722, 728, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991) (recognizing federal courts "will not review a question of federal law decided by a State court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); s*ee also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

### *C.* *Ground Three: Ineffective Assistance of Counsel*

Petitioner asserts a claim for "[i]neffective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution."  Petition (Doc. 24) at 50.  Petitioner contends that "[d]efense [c]ounsel failed to raise, at trial, the fact that the '310 machine' which analyzes DNA samples, was not working properly."  *Id.*  Petitioner's suspicion regarding the "310 machine" is based on an e-mail from "a DNA scientist" to his attorney that "there are some examples of samples being tested several times over and I just noticed something in the data which indicates that lab ***may*** have been having a problem with the 310 machine."  Petition (Doc. 24) at 48 (emphasis added).

Petitioner initially raised a claim for ineffective assistance of counsel in his petition for post-conviction relief.  Petition (Doc. 24) at 11; Answer (Doc. 30), Exh. "L" at 5.  Petitioner's PCR petition asserted that his trial counsel flirted with the county attorney and

1   failed to properly investigate the DNA evidence, a previous attorney yelled at him and

2   threatened him, and yet another attorney confused him.  *Id.* at 11, 29-30; Answer (Doc. 30),

3   Exh. "L" at 5, 21-22.  In consideration of that petition, the trial court analyzed Petitioner's

4   claims pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Answer (Doc. 30),

5   Exh. "K" at 6.  Relevant to Petitioner's claims before this Court, the trial court found that

6   "DNA was a central element at this case and was heavily litigated in court, at trial, and on

7   appeal." *Id.*  Furthermore, "[i]f there were any potential DNA issues that were missed, they

8   would have been so minuscule and remote as to preclude any defense attorney from being

9   ineffective for failing to follow through." *Id.*  Accordingly, the trial court held that "[t]he

10  Petitioner has wholly failed to meet his burden of showing ineffective assistance of counsel."

11  *Id.*  On review by the Arizona Court of Appeals, the court recognized Petitioner's assertion

12  of ineffective assistance of counsel, but relied on the trial court's "detailed and thorough

13  minute entry order that clearly identified each of Sanders's arguments and correctly ruled on

14  them." Answer (Doc. 30), Exh. "O" at 3.  The appellate court went on to "approve and adopt

15  the court's ruling and s[aw] no need to reiterate it[.]" *Id.*  This Court finds that Petitioner has

16  fairly presented his claim for ineffective assistance of counsel regarding a failure to raise an

17  alleged problem with the "310 machine" which analyzed the DNA evidence.  As such, this

18  claim is exhausted.

19      For cases which have been fairly presented to the State court, the Supreme Court

20  elucidated a two part test for determining whether a defendant could prevail on a claim of

21  ineffective assistance of counsel sufficient to overturn his conviction.  *See Strickland v.*

22  *Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, Petitioner must

23  show that counsel's performance was deficient.  *Id.* at 687, 104 S.Ct. at 2064.  "This requires

24  showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

25  guaranteed the defendant by the Sixth Amendment." *Id.*  Second, Petitioner must show that

26  this performance prejudiced his defense.  *Id.*  Prejudice "requires showing that counsel's

27  errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.*

28  Ultimately, whether or not counsel's performance was effective hinges on its reasonableness

1    under prevailing professional norms.  *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *see also*

2    *State v. Carver*, 160 Ariz. 167, 771 P.2d 1382 (1989) (adopting *Strickland* two-part test for

3    ineffective assistance of counsel claims).  The Sixth Amendment's guarantee of effective

4    assistance is not meant to "improve the quality of legal representation," rather it is to ensure

5    the fairness of trial.  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  "Thus, '[t]he benchmark

6    for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined*

7    the proper functioning of the adversarial process that the trial cannot be relied on as having

8    produced a just result.'"  *Pinholster*, — U.S. at —, 131 S.Ct. at 1403 (quoting *Strickland*, 466

9    at 686) (emphasis and alteration in original).

10          Furthermore, a petition for habeas corpus by a person in state custody:

11          shall not be granted with respect to any claim that was adjudicated on the
             merits in State court proceedings unless the adjudication of the claim – (1)
12          resulted in a decision that was contrary to, or involved an unreasonable
             application of, clearly established Federal law, as determined by the Supreme
13          Court of the United States; or (2) resulted in a decision that was based on an
             unreasonable determination of the facts in light of the evidence presented in
14          the State court proceeding.

15    28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, — U.S. — , 131 S.Ct. 1388, 1398, 179

16    L.Ed.2d 557 (2011).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on

17    the merits' in state court, subject only to the exceptions in 2254(d)(1) and (d)(2)."

18    *Harrington*, – U.S. at –, 131 S.Ct. at 784.  "The standards created by *Strickland* and §

19    2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is

20    'doubly' so[.]" *Harrington*, — U.S. at —, 131 S.Ct. at 788 (citations omitted).  Judging

21    counsel's performance must be made without the influence of hindsight.  *See Strickland*, 466

22    U.S. at 689, 104 S.Ct. at 2065.  As such, "the defendant must overcome the presumption that,

23    under the circumstances, the challenged action 'might be considered sound trial strategy.'"

24    *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955).

25    Without the requisite showing of either "deficient performance" or "sufficient prejudice,"

26    Petitioner cannot prevail on his ineffectiveness claim.  *Strickland*, 466 U.S. at 700, 104 S.Ct.

27    at 2071.  "[T]he question is not whether counsel's actions were reasonable.  The question is

28    whether there is any reasonable argument that counsel satisfied *Strickland's* deferential

1    standard." *Gentry v. Sinclair*, – F.3d 705 F.3d 884, 899 (9th Cir. 2013) (quoting *Harrington*

2    *v. Richter*, – U.S. –, –, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011)) (alterations in original).

3    "The challenger's burden is to show 'that counsel made errors so serious that counsel was

4    not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"

5    *Harrington*, — U.S. at —, 131 S.Ct. at 787 (citations omitted). Accordingly, "[w]e apply

6    the doubly deferential standard to review the state court's 'last reasoned decision.'" *Vega v.*

7    *Ryan*, — F.3d —, 2014 WL 2019294 (9th Cir. 2014) (citations omitted).

8          After careful review of the record, the state court reasonably held that the DNA

9    evidence "was heavily litigated in court, at trial, and on appeal . . . [and] [i]f there were any

10   potential DNA issues that were missed, they would have been so minuscule and remote as

11   to preclude any defense attorney from being ineffective for failing to follow through."

12   Answer (Doc. 30), Exh. "K" at 6. Moreover, the state courts stated the proper standard under

13   *Strickland*. *See id.*, Exh. "K" at 5-6, Exh. "O" at 2-3. As such, the Arizona courts did not

14   unreasonably apply clearly established Federal law. *See Gulbrandson*, 738 F.3d at 991.

15   Further, there is no evidence before this Court to suggest that trial counsel functioned

16   deficiently in litigating the DNA evidence. Therefore, Petitioner's ineffective assistance of

17   counsel claim regarding a failure to raise an alleged problem with the "310 machine" which

18   analyzed the DNA evidence must fail. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

19        **D.    *Additional Filings***

20         The Supreme Court of the United States has held "that review under § 2254(d)(1) is

21   limited to the record that was before the state court that adjudicated the claim on the merits."

22   *Pinholster*, — U.S. at —, 131 S.Ct. at 1398. Furthermore, Section 2254(e)(2) provides:

23         If the applicant has failed to develop the factual basis of a claim in State court
           proceedings, the court shall not hold an evidentiary hearing on the claim unless
24         the applicant shows that –

25              (A) the claim relies on –

26                   (i) a new rule of constitutional law, made retroactive to cases on
                     collateral review by the Supreme Court, that was previously
27                   unavailable; or

28

1

        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

2

3

        (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

4

5  28 U.S.C. § 2254(e)(2).  The Court has reviewed all of the documents filed by Petitioner in

6  this case.  None of the additional documents provide support for Petitioner's claims of actual

7  innocence or a breakdown of the trial process before the state court.

8

9  **V.      OTHER PENDING MOTIONS**

10      **A.      *Motions to Dismiss***

11        Petitioner seeks to dismiss the criminal case underlying the instant cause of action

12  based upon allegations that the DNA testing did not meet the *Frye* standard.  *See* Pet.'s Mot.

13  to Dismiss Cases (Doc. 49); Pet.'s Mot. to Dismiss Case on Error D-N-A Results (Doc. 50).

14  "It is not the province of a federal habeas court to reexamine state-court determinations on

15  state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d

16  385 (1991).  Moreover, this Court lacks jurisdiction over the Arizona state criminal

17  proceeding.  As the Supreme Court of the United States has recognized:

18      [T]he notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

19

20

21  *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).  Accordingly,

22  Petitioner's motions to dismiss will be denied.

23      **B.      *Motions for New Trial***

24        Petitioner moves this Court for a new trial in his state criminal case alleging that he

25  did not get a fair trial.  Pet.'s Mot. for a New Trial (Docs. 55, 58, 61).  As discussed above,

26  this Court lacks jurisdiction over the Arizona state criminal proceeding, and this request

27  exceeds the scope of habeas review.  Accordingly, Petitioner's motions for new trial will be

28  denied.

1            **C.**      **Motions for Appointment of Counsel**

2         Petitioner seeks the appointment of new counsel in this case.  Pet.'s Mot. for to [sic]

3 Appoint New Counsel (Doc. 56, 59, 62).  "Indigent state prisoners applying for habeas

4 corpus relief are not entitled to appointed counsel unless the circumstances of a particular

5 case indicate that appointed counsel is necessary to prevent due process violations." *Chaney*

6 *v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986) (citing *Kreiling v. Field*, 431 F.2d 638, 640

7 (9th Cir. 1970) (per curiam).  The record before the Court does not support Petitioner's

8 claims that he is entitled to either appointed counsel or an evidentiary hearing.  Furthermore,

9 to the extent that Petition is seeking new counsel in his state court criminal proceeding, this

10 Court lacks jurisdiction. *See discussion* Section V.A., *supra*.  As such, Petitioner's motion

11 for new counsel will be denied.

12            **D.**      **Case Status**

13         Petitioner has filed a Motion for Case Status Acknowledge Back To Petitioner (Doc.

14 57).  To the extent this document request a ruling and a copy of the docket sheet, it will be

15 granted.  It will be denied as to any other request for relief.

16

17 **VI.**    **CONCLUSION**

18         Based upon the foregoing, the Court will deny Petitioner's petition.  Accordingly, IT

19 IS HEREBY ORDERED:

20         1.  Petitioner's Second Amended Petition Under 28 U.S.C. § 2254 for a Writ of

21 Habeas Corpus by a Person in State Custody (Doc. 24) is DENIED;

22         2.  Petitioner's Motion to Dismiss Cases (Doc. 49) and Motion to Dismiss Case on

23 Error D-N-A Results (Doc. 50) are DENIED.

24         3.  Petitioner's Motion[s] for a New Trial (Docs. 55, 58, 61) are DENIED.

25         4.  Petitioner's Motion[s] for to [sic] Appoint New Counsel (Doc. 56, 59, 62) are

26 DENIED.

27         5.  Petitioner's Motion for Case Status Acknowledge Back To Petitioner (Doc. 57),

28 is GRANTED in part and DENIED in part;

1    6.   The Clerk of the Court shall send a copy of the docket sheet in this case to

2    Petitioner;

3    7.   This matter is DISMISSED with prejudice;

4    8.   A certificate of appealability is DENIED.  *See* 28 U.S.C. § 2253.  Reasonable

5    jurists would not find the Court's ruling debatable; and

6    9.   The Clerk of the Court shall enter judgment and shall then close its file in this

7    matter.

8    DATED this 11th day of September, 2014.

9

10   _____

11   Bruce G. Macdonald
     United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28